142 Nev., Advance Opinion 17

IN THE SUPREME COURT OF THE STATE OF NEVADA

LANCE D. STUCKEY, SR., AND
SALVADORE TORRES,
INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED,
Appellants,
vs.
APEX MATERIALS, LLC; ELKHORN
ENVIRONMENTAL, LLC; WERDCO BC
INC.; WERDCO LLC; HARBER
COMPANY, INC.; TAB CONTRACTORS,
INC.; WILLIAM CHARLES
CONSTRUCTION COMPANY; BOYD
MARTIN CONSTRUCTION LLC; CG&B
ENTERPRISES, INC.; BALDWIN
DEVELOPMENT LLC, A DOMESTIC
LIMITED LIABILITY COMPANY;
TAND, INC.; AND HOLCIM (US) INC.,
D/B/A AGGREGATE INDUSTRIES,
Respondents.

No. 87775

FILED

FEB 26 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order granting a motion to dismiss a putative class action to collect the difference between the overtime wages paid and the higher amount allegedly due under NRS 338.020, Nevada's prevailing-wage statute. Eighth Judicial District Court, Clark County; Jacob A. Reynolds, Judge.

*Affirmed.*

Leon Greenberg Professional Corporation and Leon M. Greenberg and Ruthann Devereaux-Gonzalez, Las Vegas,
for Appellants.

26-09022

Allison Law Firm Chtd. and Noah G. Allison, Las Vegas,
for Respondents Boyd Martin Construction LLC and CG&B Enterprises, Inc.

Everett Dorey LLP and Jeremy E. Beal, Las Vegas; Butzel Long and Blaine Veldhuis, Troy, Michigan,
for Respondent Holcim (US) Inc.

Champion Lovelock Law and Donna DiMaggio and Andrea M. Champion, Las Vegas,
for Respondent TAB Contractors, Inc.

Hutchison & Steffen, PLLC, and Stewart C. Fitts and Ramez A. Ghally, Las Vegas,
for Respondent Baldwin Development LLC.

Jackson Lewis, P.C., and Paul T. Trimmer, Las Vegas,
for Respondent William Charles Construction Company.

Littler Mendelson, P.C., and Andrew S. Clark, Montgomery Y. Paek, and Emil S. Kim, Las Vegas; Michael D. Dissinger, Las Vegas,
for Respondents Apex Materials, LLC; Elkhorn Environmental, LLC; Harber Company, Inc.; Werdco BC Inc.; and Werdco LLC.

McCullough & Associates, Ltd., and Christopher R. McCullough, Las Vegas,
for Respondent Tand, Inc.

Kemp & Kemp and James P. Kemp, Las Vegas,
for Amicus Curiae Nevada Justice Association.

Reese Ring Velto PLLC and Nathan R. Ring, Las Vegas,
for Amici Curiae International Brotherhood of Electrical Workers, Local 1245; International Brotherhood of Electrical Workers, Local 357; International Brotherhood of Electrical Workers, Local 396; Northern Nevada Building & Construction Trades Council; Northern Nevada Labor Management Fund; Southern Nevada Building Trades Unions; Southern Nevada Chapter of the National Electrical Contractors Association; and Southern Nevada Labor Management Cooperation Committee.

---

BEFORE THE SUPREME COURT, EN BANC.[1]

*OPINION*

By the Court, PICKERING, J.:

NRS Chapter 338 creates an administrative scheme for the determination and enforcement of prevailing-wage and overtime pay requirements on public works projects. Alleging that they performed prevailing-wage work yet were not paid overtime at the prevailing-wage rates specified in NRS 338.020(3), appellants sued respondent employers and contractors in district court for the deficiency. The question presented is whether employees may sue to enforce NRS 338.020(3) directly or must instead work through the administrative remedies NRS Chapter 338 provides, with judicial review to follow, if appropriate. We hold that NRS Chapter 338 does not afford a private right of action to employees outside the administrative process it creates. Because appellants' claims depend on proving a violation of the prevailing-wage and/or overtime pay provisions in NRS 338.020, they must first seek redress through NRS Chapter 338's administrative process. Nor can they circumvent that process by asserting their claims under NRS Chapter 608's more general wage-and-hour provisions or as third-party beneficiaries, since the claims still depend on an alleged but administratively undetermined entitlement to prevailing-wage and/or overtime pay under NRS 338.020. The district court therefore properly dismissed the complaint, and we affirm.

---

[1]The Honorable Patricia Lee, Justice, being disqualified, did not participate in the decision of this matter.

## I.

Appellants Lance D. Stuckey and Salvadore Torres (collectively Stuckey) filed a putative class action against a group of subcontractors (the Apex Defendants) and general contractors (the Original Contractors), respondents here. In his complaint, Stuckey alleged that the Apex Defendants employed him and other similarly situated workers and that some of their work was on public works projects. He further alleged that they worked overtime—more than eight hours a day or 40 hours a week— and that under NRS 338.020(3) they should have been but were not paid one and one-half times the prevailing wage for the overtime hours worked.[2]

---

[2]NRS 338.020(3) provides as follows:

> Except as otherwise provided in subsection 4, a contractor or subcontractor shall pay to a mechanic or worker employed by the contractor or subcontractor on the public work not less than one and one-half times the prevailing rate of wages applicable to the class of the mechanic or worker for each hour the mechanic or worker works on the public work in excess of:
>
> (a) Forty hours in any scheduled week of work by the mechanic or worker for the contractor or subcontractor, including, without limitation, hours worked for the contractor or subcontractor on work other than the public work; or
>
> (b) Eight hours in any workday that the mechanic or worker was employed by the contractor or subcontractor, including, without limitation, hours worked for the contractor or subcontractor on work other than the public work, unless by mutual agreement the mechanic or worker works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

As damages, the complaint sought the difference between the wages paid and the higher prevailing-wage and/or overtime pay allegedly due under NRS 338.020 for qualifying public works project work.

Stuckey's complaint sought damages directly under NRS 338.020(3). In the alternative, it alleged Stuckey had the right to recover the same damages under the more general wage-and-hour provisions of NRS Chapter 608 or as a third-party beneficiary of the public works contract(s) between the public body and the Original Contractors and/or Apex Defendants. The complaint does not identify the public works project(s) on which Stuckey and proposed class members allegedly worked. Nor does it allege that they asked the Labor Commissioner or the contracting public body to determine that their work qualified for prevailing-wage pay and its rate or to recover and remit the deficiency under the procedures provided in NRS Chapter 338.

The matter came before the district court on respondents' NRCP 12(b)(5) motion to dismiss Stuckey's first amended complaint. Stuckey filed an opposition and countermotion to amend the complaint to clarify that he sought damages for underpayment of prevailing wages for both regular and overtime work. Citing Stuckey's failure to allege exhaustion of NRS Chapter 338's administrative remedies, the court granted the motion to dismiss. It concluded that "wage claims under NRS Chapter 338 are not enforceable through a private right of action" and that the remaining claims likewise failed because they were "strictly derivative" of the claim pleaded directly under NRS 338.020(3). It also denied Stuckey's countermotion for leave to amend as futile, because the proposed second amended complaint did not cure the deficiencies in the original and first amended complaints. Stuckey timely appealed.

## II.

Stuckey maintains that the district court improperly dismissed the complaint, contending that Nevada law, particularly *Neville v. Eighth Judicial District Court*, 133 Nev. 777, 406 P.3d 499 (2017), gives employees who work on public works projects a private right of action to directly enforce NRS 338.020's prevailing-wage and overtime provisions separate and apart from the administrative remedies NRS Chapter 338 creates. Orders granting a motion to dismiss are reviewed de novo, as are questions of statutory interpretation. *Moon v. McDonald, Carano & Wilson LLP*, 129 Nev. 547, 550, 306 P.3d 406, 408 (2013); *Young v. Nev. Gaming Control Bd.*, 136 Nev. 584, 586, 473 P.3d 1034, 1036 (2020). In deciding a motion to dismiss under NRCP 12(b)(5), the court accepts the complaint's factual allegations as true and draws all inferences in the plaintiff's favor. *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008). An order denying a motion for leave to amend a pleading is reviewed deferentially for an abuse of discretion. *Kantor v. Kantor*, 116 Nev. 886, 891, 8 P.3d 825, 828 (2000).

## A.

NRS Chapter 338's prevailing-wage law—known as the "Little Davis-Bacon Act" after its federal counterpart, 40 U.S.C. § 3141—was adopted to regulate state-funded public works. *See State, Dep't of Bus. & Indus. v. Granite Constr. Co.*, 118 Nev. 83, 86, 40 P.3d 423, 426 (2002). The Act recognizes that paying "prevailing wages" on public works projects is essential to Nevada's economic well-being and is important for increasing the number of skilled construction workers in our state, enhancing the workforce, and increasing redevelopment opportunities. NRS 338.01155(1). By its terms, the Act requires a contractor to whom a public works contract is awarded by a government body, and any subcontractor, to pay all workers

employed in the execution of the contract not less than the prevailing wage in that region as established by the Nevada Labor Commissioner for each craft or type of work, NRS 338.030(1); *see* NRS 338.025, as well as time-and-a-half overtime at prevailing-wage rates, NRS 338.020(3). *See Granite Constr. Co.*, 118 Nev. at 86, 40 P.3d at 426.

NRS Chapter 338 makes extensive provision for the Labor Commissioner and the contracting public body to establish and enforce its prevailing-wage and overtime pay requirements. *See, e.g.*, NRS 338.030; NRS 338.035; NRS 338.040; NRS 338.060; NRS 338.070; NRS 338.090. However, it does not expressly provide a private right of action in favor of employees. Our caselaw holds that "the absence of an express provision providing for a private cause of action to enforce a statutory right strongly suggests that the Legislature did not intend to create a privately enforceable judicial remedy." *Baldonado v. Wynn Las Vegas*, 124 Nev. 951, 959, 194 P.3d 96, 101 (2008). The question comes down to legislative intent. *Neville*, 133 Nev. at 781, 406 P.3d at 503. "Without legislative intent to create a private judicial remedy, 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'" *Id.* (quoting *Baldonado*, 124 Nev. at 959, 194 P.3d at 101, and *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)). A private right of action cannot be "implied" from a statutory right, in other words, "unless the implication both is clear and is based on the text of the statute—not exclusively its purpose." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 317 (2012).

NRS Chapter 338's statutory scheme provides a specific and detailed administrative mechanism for addressing unpaid prevailing-wage

and overtime claims. An aggrieved worker must file a complaint with the Labor Commissioner alleging a violation of the prevailing-wage requirements, which the purported violator must then answer. *See* NAC 338.107(1); NAC 338.108(1); *see also* NRS 338.012 (authorizing the Labor Commissioner to adopt regulations to implement the statutory scheme). If the Labor Commissioner determines that further investigation is warranted, he or she will investigate or order an investigation. *See* NAC 338.108(3). The public body that awarded the contract must then determine whether the contractor has committed a violation and inform the Labor Commissioner accordingly, NRS 338.070(1)(a), after which the contractor is afforded a hearing before the Labor Commissioner, NRS 338.090(2)(a).

At the hearing, the Labor Commissioner determines whether the work qualified for prevailing wages and, if so, the applicable classification and the underpayment, if any, that occurred. *See Bombardier Transp. (Holdings), USA, Inc. v. Nev. Labor Comm'r*, 135 Nev. 15, 19, 433 P.3d 248, 253 (2019) (applying NRS 338.010(15)); *City Plan Dev., Inc. v. Off. of the Lab. Comm'r*, 121 Nev. 419, 432, 117 P.3d 182, 190 (2005). If the Labor Commissioner finds that prevailing wages were owed but not paid, the violator is assessed "an amount equal to the difference between the prevailing wages required to be paid, and the wages that the contractor or subcontractor actually paid" and any fringe benefits due. NRS 338.090(2)(a) & (b); *see* NRS 338.035(4)(c). A contractor who violates the wage provisions forfeits to the public body the amounts set by NRS 338.060. The Labor Commissioner may order the public body to withhold those amounts from any payment due the contractor and pay those amounts to the Labor Commissioner, after which the Labor Commissioner may pay those amounts to the worker if the matter is resolved in their favor. NRS

(O) 1947A

338.515(7). The Labor Commissioner may also impose an administrative penalty, NRS 338.090(2)(c), debar the contractor or subcontractor from future public works contracts, NRS 338.017, and direct disbursement of any amounts the public body withholds, NAC 338.112(1)(c).

This comprehensive scheme weighs against implying a private right of action separate and apart from NRS Chapter 338's administrative processes. That chapter's detailed provisions empower the Labor Commissioner to decide if prevailing wages are due and their amount, to adjudicate violations, to impose penalties on the contractors and subcontractors, and to withhold or assess the sums needed to make shortchanged workers whole. Further, it places enforcement responsibility squarely on the Labor Commissioner. NRS 338.015(1) ("The Labor Commissioner shall enforce the provisions of NRS 338.010 to 338.130, inclusive."). There would be little need for this mandate and the detailed administrative process if the worker could bring an action in district court in the first instance to invoke and enforce the prevailing-wage and overtime provisions. To judicially add an implied private right of action would undermine the comprehensive administrative scheme NRS Chapter 338 establishes for the efficient and uniform enforcement of Nevada's prevailing-wage statutes. *Cf. Peltier v. Almar Mgmt., Inc.*, 229 F. Supp. 3d 1160, 1168 (D. Haw. 2017) ("Courts have generally found that implying a private right of action in a statute that is part of an administrative scheme would undercut legislative goals . . . .").

Federal courts have reached this same conclusion in regard to the Davis-Bacon Act (DBA), on which NRS Chapter 338 was modeled. *See Grochowski v. Phoenix Constr.*, 318 F.3d 80, 85 (2d Cir. 2003) (stating that "the great weight of authority indicates" that the DBA does not confer "a

private right of action on an aggrieved employee for back wages"); *see Hartford Fire Ins. Co. v. Tr. of Constr. Indus.*, 125 Nev. 149, 155, 208 P.3d 884, 888 (2009) (explaining that where a Nevada statute is modeled after federal law, federal caselaw interpreting that law is persuasive). Had the legislature meant to create a private right of action for employees in Stuckey's position, it would have said so. *Cf.* NRS 338.016 (providing a private right of action for bidders on public works projects). But it did not, and it would be inappropriate to imply one here. *See* Scalia & Garner, *Reading Law, supra*, at 93 ("Nothing is to be added to what the text states or reasonably implies.").

Neville does not alter this analysis. *Neville* considered whether a private right of action exists to recover unpaid wages under the general wage-and-hour provisions in NRS Chapter 608. 133 Nev. at 778, 406 P.3d at 500-01. The question in that matter was whether NRS 608.140, which allows a plaintiff to obtain attorney fees in an unpaid wages action, also allows a private cause of action to recover the wages. *Id.* at 781-82, 406 P.3d at 502-03. Although NRS Chapter 608 was silent on a private right of action to enforce its payment provisions, *Neville* inferred the private right of action from NRS 608.140's express allowance of attorney fees—if there was no private right of action, then why make express provision for an individual to recover attorney fees? *Id.* at 781-83, 406 P.3d at 503-04; *see* Scalia & Garner, *supra*, at 316 (stating that it would be appropriate to imply a private right of action where a statute, though silent as to a private right of action, expressly provided that "[i]n any private suit for violation of this statute, the victorious plaintiff will be entitled to attorney's fees"). But *Neville*'s analysis turned on the express attorney fee provision in NRS Chapter 608. It does not support implying a private right of action for sums

statutorily due under NRS Chapter 338's public works project provisions, which contain no similar language suggesting that the legislature intended to create a private right of action for underpayment of prevailing-wage sums due under that chapter.

A worker seeking to recover underpaid wages based on a statutory violation of NRS Chapter 338's prevailing-wage and overtime rates must do so through the administrative scheme. *See, e.g., United States ex rel. Krol v. Arch Ins. Co.*, 46 F. Supp. 3d 347, 350-55 (S.D.N.Y. 2014) (concluding laborers may bring an action only if there is an administrative finding of a prevailing-wage violation and the government-withheld payments are insufficient to make the laborer whole). This ensures that the worker has grounds to assert the claim, eliminates the risk of inconsistent rulings by the Labor Commissioner and the courts about whether the work is governed by the prevailing-wage statutes and a violation has occurred, and facilitates the efficient enforcement of prevailing-wage laws. *Id.* at 354-55; *see also Int'l Bhd. of Elec. Workers Loc. 113 v. T & H Servs.*, 8 F.4th 950, 957 (10th Cir. 2021) (discussing the DBA and noting that, "[o]verall, this 'elaborate administrative scheme' is meant to provide 'consistency' and 'uniformity' in 'the administration and enforcement of the [DBA],' and 'balances the interests of contractors and their employees.'") (quoting *Univs. Rsch. Ass'n v. Coutu*, 450 U.S. 754, 782-83 (1981)).

## B.

Stuckey contends that even if NRS Chapter 338 does not give him and the proposed class a private right of action to enforce NRS 338.020 directly, they should have been allowed to proceed with the alternative claims they asserted against the Apex Defendants and Original Contractors under NRS 608.135 and NRS 608.150. NRS 608.135 provides that an

employee may bring a civil action against an employer who "fails to pay wages, compensation or salary to an employee in accordance with the requirements set forth in NRS 608.020 to 608.050, inclusive," and directs the Labor Commissioner to "not take jurisdiction of a claim" for such wages while a civil suit to recover them is pending. NRS 608.150 makes an original contractor liable for a subcontractor's indebtedness to an employee for work performed on the contract. In addition, the complaint asserts a claim under NRS 608.040 and NRS 608.050, which impose penalties on an employer who does not timely pay the wages due on separation or termination.

Stuckey's claims are all founded on the allegation that the Apex Defendants and Original Contractors violated NRS 338.020 by not paying prevailing wages and overtime at the rates mandated by NRS Chapter 338. But NRS Chapter 608 does not create liability for failure to pay prevailing wages or overtime calculated under NRS 338.020(3). Unlike NRS 338.010(26)(a), which defines "wages" to mean the "basic hourly rate of pay," NRS 608.012 defines "wages" in contract terms, as "[t]he amount which an employer agrees to pay an employee for the time the employee has worked." And while NRS 608.018 requires overtime on "wages" as defined in NRS 608.012, that provision excludes hours to which the overtime provisions of NRS 338.020(3) and (4) apply. NRS 608.018(3)(n). Finally, NRS 608.135's provision that the Labor Commissioner shall not take jurisdiction of any dispute that is the subject of the civil action it authorizes to enforce NRS 608.020 through 608.050 cannot be reconciled with the comprehensive administrative scheme NRS Chapter 338 establishes to enforce prevailing-wage and overtime rights under NRS 338.020.

Where a general statute and a specific statute cover the same subject, the specific statute controls. *See Saticoy Bay LLC Series 3580 Lost Hills v. Foreclosure Recovery Servs., LLC*, 140 Nev., Adv. Op. 75, 559 P.3d 856, 861 (2024); *In re Resort at Summerlin Litig.*, 122 Nev. 177, 185, 127 P.3d 1076, 1081 (2006). The claims asserted under NRS Chapter 608 in this case all depend on establishing a violation of NRS 338.020. NRS Chapter 338 provides the procedures for establishing such a violation, which Stuckey does not allege were pursued or not applicable because unavailing. *Cf. State, Dep't of Health & Hum. Servs. v. Samantha Inc.*, 133 Nev. 809, 812, 407 P.3d 327, 329 (2017) (addressing the availability of equitable remedies in administrative cases and recognizing that other remedies "may be available in the discretion of the court and only when legal remedies . . . are not available or are inadequate") (citation modified). It would be inconsistent with NRS Chapter 338 to allow the claim for underpaid prevailing wages and overtime to proceed under NRS 608.135 or NRS 608.150, given Stuckey's and the proposed class members' failure to establish the violation of NRS 338.020 on which their claims depend. *See Krol*, 46 F. Supp. 3d at 352-53 (dismissing a claim premised on an alleged DBA violation that had not been established through pursuit of the administrative remedies provided by the Act). We therefore affirm the district court's dismissal of the claims asserted under NRS Chapter 608 in this case.[3]

## C.

Stuckey next asserts that the district court erred in dismissing his claim to relief as a third-party beneficiary of the public works contracts

---

[3]To the extent Stuckey argues NRS 608.040 and NRS 608.050 also provide separate private rights of action, those arguments fail for the reasons stated in the text.

on which he and the proposed class members worked. The complaint does not attach the contracts but alleges that they required payment of prevailing-wage and overtime pay under NRS 338.020. Stuckey argues that virtually every other state allows workers to bring third-party beneficiary claims to enforce prevailing-wage statutes. The respondents contend that a third-party beneficiary claim is incompatible with the statutory scheme because the claim depends on statutory obligations for which no private right of action exists.

Stuckey notes that courts in other jurisdictions have held that workers may be able to sustain third-party beneficiary claims in similar circumstances. But material factual or legal differences exist between the out-of-state cases Stuckey cites and this one. Some cases discuss the availability of administrative remedies and the importance of first exhausting these remedies where available. *E.g., Favel v. Am. Renovation & Constr. Co.*, 59 P.3d 412, 427 (Mont. 2002). Others do not involve issues directly analogous to the one here. *E.g., Ind. State Bldg. & Constr. Trades Council v. Warsaw Cmty. Sch. Corp.*, 493 N.E.2d 800, 805 (Ind. Ct. App. 1986) (discussing the issue in dicta only); *State ex rel. Evans v. Brown Builders Elec. Co.*, 254 S.W.3d 31, 37 (Mo. 2008) (addressing recovery of prejudgment interest); *Bryson v. Cent. Elec. Co.*, 402 So. 2d 922, 925 (Ala. 1981) (addressing vested rights after repeal of statute). And yet another was reversed by a decision deeming the agreed-upon administrative determination binding and preclusive of the employee's private suit for damages. *See Austin Bridge Co. v. Teague*, 152 S.W.2d 1091, 1093 (Tex. 1941) (reversing the court of appeals decision Stuckey cites, 149 S.W.2d 674, because the State Highway Engineer denied the claim and the public works contract made the denial binding on the parties). Stuckey's cited authority,

in sum, is either unhelpful or serves to highlight material differences in Nevada's statutory scheme.

Given NRS Chapter 338's structure and its express administrative procedure, we find the Second Circuit's reasoning in *Grochowski*, 318 F.3d. at 84-85, persuasive. There, the court addressed whether a worker could assert a third-party beneficiary claim to enforce the prevailing-wage provisions of the DBA. *Id.* at 85. The court rejected the plaintiffs' claims as "indirect attempts at privately enforcing the prevailing wage schedules contained in the DBA." *Id.* at 86. It concluded that allowing a third-party private contract action to enforce the prevailing-wage provisions "would be 'inconsistent with the underlying purpose of the legislative scheme and would interfere with the implementation of that scheme to the same extent as would a cause of action directly under the statute.'" *Id.* (quoting *Davis v. United Air Lines, Inc.*, 575 F. Supp. 677, 680 (E.D.N.Y. 1983)). The court characterized the plaintiffs' efforts to bring a third-party beneficiary claim as "clearly an impermissible end run around" the prevailing-wage statutes. *Id.* (internal quotation marks omitted). The United States Supreme Court has cited *Grochowski*'s reasoning with approval. *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 118 (2011) (prohibiting a third-party beneficiary claim based on a contract that incorporates statutory provisions that do not afford a private right of action).

The Nevada Legislature has provided an administrative process for recovering prevailing wages and overtime on public works projects. It opted not to create a private right of action independent of that process. It would be inconsistent with the legislative scheme to permit enforcement of those statutory rights through third-party beneficiary

SUPREME COURT
OF
NEVADA

(O) 1947A

claims. See *Peltier*, 229 F. Supp. 3d at 1169 (explaining "courts will not allow a third-party breach of contract claim where the statutory and contractual obligations . . . are one and the same") (citation modified); *Donis v. Am. Waste Servs., LLC*, 125 N.E.3d 759, 773 (Mass. App. Ct. 2019) (explaining that its state legislature created a specific remedy and did not intend plaintiffs to be able to circumvent this by asserting third-party beneficiary claims), *aff'd in part, rev'd in part on other grounds*, 485 Mass. 257 (2020). Like the NRS Chapter 608 claims, Stuckey's third-party beneficiary claim simply seeks to enforce NRS Chapter 338's prevailing-wage requirements. But "plaintiffs cannot get around the administrative prerequisites of the Act simply by dressing up their claim in new language and asserting that it arises under [other] law." *Johnson v. Prospect Waterproofing Co.*, 813 F. Supp. 2d 4, 9 (D.C. Cir. 2001). We therefore affirm the dismissal of the third-party beneficiary claim.

## D.

Last, Stuckey contends that the district court abused its discretion when it denied leave to file a second amended complaint. Denial of leave to amend is appropriate where amendment would be futile, *Allum v. Valley Bank of Nev.*, 109 Nev. 280, 287, 849 P.2d 297, 302 (1993), or seeks to plead an impermissible or meritless claim, *Nutton v. Sunset Station, Inc.*, 131 Nev. 279, 289, 357 P.3d 966, 973 (Ct. App. 2015) (citing *Soebbing v. Carpet Barn, Inc.*, 109 Nev. 78, 84, 847 P.2d 731, 736 (1993)). The proposed amendment left the claims materially unchanged and so would have been futile. The district court did not abuse its discretion when it so held.

## III.

NRS Chapter 338 does not provide workers a private right of action against employers who violate NRS 338.020's prevailing-wage and overtime pay requirements. It vests enforcement responsibility with the

Labor Commissioner and the contracting public body. Since the claims alleged in this case all seek damages for violation of NRS 338.020's statutory prevailing-wage and overtime pay requirements, those claims needed to be presented to the Labor Commissioner in the first instance. Because they were not, the claims were properly dismissed. We therefore affirm.

_____Pickering_____, J.
Pickering

We concur:

_____, C.J.
Herndon

_____, J.
Parraguirre

_____, J.
Bell

_____, J.
Stiglich

_____, J.
Cadish

